**The relief described hereinbelow is SO ORDERED.**

**SIGNED this 13th day of August, 2013.**



_____
Robert D. Berger
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF KANSAS

**In re:**

**AARON GRANT BUERGE,**  Case No. 11-20325
      **Debtor.**

---

**ERIC C. RAJALA, CHAPTER 7 TRUSTEE,**
      **Plaintiff,**

      v.  Adv. No. 13-6014

**ALDEN BUERGE,**
      **Defendant.**

---

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on Defendant Alden Buerge's Motion to Dismiss.[1] The motion seeks to dismiss the Adversary Complaint filed by Eric C. Rajala, Chapter 7 Trustee, on the basis that the Trustee lacks standing to bring this action. These matters constitute core

---

[1] Doc. 6 in Adv. No. 13-6014.

13.08.12-A Buerge MTD.wpd

proceedings over which the Court has the jurisdiction and authority to enter a final order.[2]

## I. Background and Findings of Fact

Debtor, Aaron Grant Buerge, filed for relief under Chapter 7 of the Bankruptcy Code on February 11, 2011. On the petition date, Aaron was the owner of 306.47 shares of stock in a family-owned bank holding company known as Buerge Bancshares, Inc. ("BBI"), and 132.64225 shares of stock in a second family-owned bank holding company known as Financial Enterprises, Inc. ("FEI"). In Aaron's main bankruptcy proceeding, his father, Alden Buerge, filed a proof of claim asserting a security interest and lien in the shares of BBI. This secured claim is based upon a Note and Security Agreement dated September 1, 2008, which grants Alden a security interest and lien in BBI Certificate #136 representing 47 shares of BBI stock and Certificate #138 representing 53 shares of BBI stock.

The BBI shares are subject to certain restrictions on their transfer, as set forth in the Stock Purchase Agreement ("SPA") signed by Debtor and BBI. The SPA places the following restrictions on the transfer of the BBI shares owned by Aaron:

(1) Section 2(a) provides that stockholders may not "sell, assign, transfer, pledge or otherwise dispose of or encumber, by sale, gift, will or otherwise, any stock of the Corporation except in accordance with this Agreement."

(2) Section 2(b) provides that a stockholder must offer to sell the shares to the Corporation before disposing of them. Section 4 provides the procedures for offering shares to the Corporation. Such procedures include providing written notice of the offer and granting 30 days during which the Corporation could exercise its option.

---

[2] *See* 28 U.S.C. § 157(b)(2)(B), (E) and (K) (core proceedings) and § 157(b)(1) (authority to hear core proceedings).

13.08.12-A Buerge MTD.wpd

(3) Section 2(a) provides that any purported disposition prohibited by the SPA "shall be void and ineffective."

(4) Section 7(a) provides that no disposition is effective unless such transfer is in compliance with the SPA and any attempted disposition of stock in violation of the SPA "shall be null and void *ab initio*."[3]

According to the Trustee, Aaron did not comply with the terms of the SPA prior to pledging the stock as security for the loan from Alden. Specifically, the Trustee claims that Aaron did not offer to sell the stock to BBI before pledging it to Alden; did not provide written notice to BBI of his intent to pledge the BBI shares as collateral to Alden; did not grant BBI 30 days during which BBI could exercise its option to purchase the shares; and "did not comply with any of the other terms, conditions, and procedures required under the SPA in order to effectuate a valid transfer of a security interest in the BBI Shares to Alden."[4]

The Trustee initiated this adversary proceeding seeking to invalidate Alden's purported security interest in the shares of BBI and to require turnover of the stock certificates for BBI stock owned by Aaron that are in Alden's possession.

The shares of BBI owned by Aaron were part of prior litigation in Aaron's main bankruptcy case. In Aaron's main bankruptcy case, he sought an order requiring the Trustee to abandon the estate's interest in the shares of BBI on the basis that any potential sale of the stock would be difficult and costly and that any potential profits from such sale would provide an

---

[3] Complaint, Doc. 1 at 3.
[4] *Id.* at 4. The SPA has not been provided to the Court, so the Court is unable to determine whether there are any other "terms, conditions, and procedures" under the SPA that may apply to this matter. However, given the current posture of this case and the fact that it is before the Court on a motion to dismiss, the Court will assume that the Trustee is correct in his assertions concerning Aaron's failure to comply with the SPA, without actually deciding that a violation of the SPA has occurred. The question of whether Aaron and Alden complied with the SPA does not need to be determined in the context of this motion to dismiss.

13.08.12-A Buerge MTD.wpd

inconsequential benefit to general unsecured creditors. On September 6, 2012, the Court granted Aaron's motion and ordered the Trustee to abandon all interest in the stock held by Aaron in BBI.[5]

Section 554(b)[6] provides that any party-in-interest may move the court to compel abandonment of property of the estate. Such a motion is a contested matter under Federal Rule of Bankruptcy Procedure 9014[7] and is governed by Rule 6007. Notice and hearing is required. In Aaron's main case, the Court conducted an extensive hearing and considered evidence with regard to whether the assets ordered abandoned were "burdensome to the estate or . . . of inconsequential value and benefit to the estate."[8] In this case, the Debtor's motion to abandon was opposed by the Chapter 7 Trustee and by the largest creditor of the estate. If a motion for abandonment is opposed by parties-in-interest, then it is the movant who has the burden of proof. However, "the party opposing the request that property be abandoned must show some likely benefit to the estate; mere speculation about possible scenarios in which there might be a benefit is not sufficient."[9] Since it was the Debtor who sought abandonment of the assets, it was incumbent upon the Debtor to provide adequate notice to the parties-in-interest, the latter of whom had the right to object to an order directing abandonment by the Trustee. A three-day

---

[5] *In re Buerge*, 479 B.R. 101 (Bankr. D. Kan. 2012). The Court's order directing abandonment of the shares of BBI stock has been appealed to the 10th Circuit Bankruptcy Appellate Panel, where it is currently pending. The BAP has, however, denied the Trustee's motion to stay enforcement of the order requiring abandonment of the stock interests while the appeal is pending. *Rajala v. Buerge*, No. 13-24, Doc. 30 (B.A.P. 10th Cir. filed May 17, 2013).

[6] This and all future statutory references are to the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532, unless otherwise specifically noted.

[7] All future references to Rules are to the Federal Rules of Bankruptcy Procedure, unless otherwise specifically noted.

[8] *See* § 554(b).

[9] 5 COLLIER ON BANKRUPTCY ¶ 554.02[3] at 554-7 to 554-8 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2013).

13.08.12-A Buerge MTD.wpd

evidentiary hearing was conducted to determine whether the Court should approve the Trustee's proposed sale of the assets or whether the Debtor's motion for an order directing abandonment by the Trustee should be granted. This detailed procedure stands in stark contrast to the short circuit removal of certain personal property, and relief from the automatic stay relating thereto, under the limited provisions of § 362(h)(1) relied upon by the Trustee.

The effect of abandonment of estate assets under § 554 is that "the trustee is divested of control of the property because it is no longer a part of the estate. Thus, abandonment constitutes a divesture of all of the estate's interests in the property. Property abandoned under section 554 reverts to the debtor, and the debtor's rights to the property are treated as if no bankruptcy petition was filed."[10] Abandonment is effective retroactively to the petition date as if the debtor were its owner during the pendency of this bankruptcy.[11] With the exception of property that is successfully exempted by the debtor, the bankruptcy court loses subject matter jurisdiction over property of the estate upon abandonment.[12] Abandoned property is out of the reach and control of the trustee; it becomes property of the debtor's non-bankruptcy estate as if the bankruptcy had not been filed by the debtor.[13] In effect, "abandonment occurs nunc pro tunc to the petition date, so that the debtor is treated as having owned the property continuously."[14] The consequence of abandonment under § 554 is clear: "The estate has no interest in, and does not administer, abandoned property."[15]

---

[10] *Id.* at 554-6.
[11] 4 WILLIAM L. NORTON, JR., AND WILLIAM L. NORTON III, NORTON BANKRUPTCY LAW AND PRACTICE § 74:1 at 74-4 (3d ed. 2013).
[12] *Id.*, § 74:2 at 74-5 to 74-6; 5 COLLIER ON BANKRUPTCY ¶ 554.02[3] at 554-6.
[13] 4 NORTON BANKRUPTCY LAW AND PRACTICE ¶ 74:2 at 74-6.
[14] *Id.*, § 74-1 at 74-4.
[15] *In re Dewsnup*, 908 F.2d 588, 590-91 (10th Cir. 1990), *aff'd sub nom. Dewsnup v. Timm*, 502 U.S. 410 (1992).

**II.     Analysis**

The Complaint in this adversary proceeding includes five separate counts. Alden has moved to dismiss the entire Complaint based upon a lack of standing. "Dismissal for a lack of standing is jurisdictional, and thus is properly brought under Fed. R. Civ. P. 12(b)(1)."[16] When considering a motion to dismiss based upon a lack of standing, the Court "must accept as true all material allegations of the complaint [ ] and must construe the complaint in favor of the complaining party."[17] As the party seeking to invoke federal jurisdiction, the Trustee bears the burden to establish standing.[18] However, at this stage of the proceedings, the Trustee's burden is "lightened considerably."[19]

**A.     The Trustee Lacks Standing to Pursue Count I of the Complaint.**

Count I of the Complaint seeks a determination that Alden's security interest in the BBI shares is invalid and void. The Trustee alleges that, due to the restrictions on the transfer of the BBI stock imposed by the SPA, Debtor's attempt to pledge his stock as security for the loan from Alden was void *ab initio*. Specifically, the Trustee cites to Section 2(a) of the SPA, which provides that stockholders "will not sell, assign, transfer, pledge or otherwise dispose of or encumber by sale, gift, will or otherwise, any stock of [BBI] except in accordance with this Agreement." Section 2(b) of the SPA states that prior to disposing of any stock, a stockholder must provide written notice to BBI of an offer to sell the shares back to the corporation. Sections 2(a) and 7(a) of the SPA both provide that any purported sale or disposition of shares of stock

---

[16] *Hamilton v. Washington Mutual Bank, FA (In re Colon)*, 345 B.R. 723, 726 (Bankr. D. Kan 2005).
[17] *Initiative & Referendum Inst. v. Walker*, 450 F.3d 1082, 1089 (10th Cir. 2006) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).
[18] *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012).
[19] *Id.*

- 6 -

that are not in compliance with the SPA are void.[20] According to the Trustee, because Aaron did not offer to sell the BBI shares back to BBI, by providing 30 days written notice of such an offer, his pledge of the stock as collateral for a loan from Alden was ineffective and void.

As an aside, one would question whether the Trustee would succeed in this claim, even if he were to establish standing and prove that Aaron and Alden did not comply with the SPA when Aaron hypothecated the stock. In a closely held corporation the SPA exists to protect other shareholders and the corporation, and it is they who would have standing to seek a remedy to redress such non-compliance. As observed by a leading treatise:

> Restrictions on the transfer of stock or stock rights, including pledges, can be part of the corporate charter, articles of incorporation or the stock offering itself. These restrictions are normally used to protect closely held corporations so that control will not pass to unknown or undesirable partners. The restrictions usually apply to transfers, but pledges may also be included.[21]

From a policy perspective, restrictions on the transfer or pledge of stock in a closely held corporation are designed to bring predictability as to business associates and to insure that the stockholders are acceptable to the other shareholders in the corporation.[22] Restrictions are also designed to preserve corporate and tax attributes and to allow the closely held corporation to refuse to issue or register a stock in the name of the pledgee or transferee.

Alden claims that the Trustee lacks standing to pursue this claim because the BBI shares have been abandoned. Although Alden does not specifically address each claim set forth in the Complaint, he generally argues that because the Court has ordered Aaron's stock interests in BBI

---

[20] Section 2(a) states that any purported disposition prohibited by the SPA "shall be void and ineffective," and Section 7(a) states that any disposition that is not in compliance with the SPA "shall be null and void *ab initio*."

[21] 12A WILLIAM MEADE FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 5637.20 at 498 (perm. ed., rev. vol. 2009) (citations omitted).

[22] *See* KANSAS CORPORATION LAW & PRACTICE, § 11.05 at 11-2 (Steven A. Ramirez, ed., 1998), discussing Kansas law.

- 7 -

13.08.12-A Buerge MTD.wpd

abandoned by the estate, the Trustee has no standing to pursue the claims.

In order to establish standing necessary to bring an action in federal court, a party must show three things:

> (1) "injury in fact," by which we mean an invasion of a legally protected interest that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) a causal relationship between the injury and the challenged conduct, by which we mean that the injury "fairly can be traced to the challenged action of the defendant," and has not resulted "from the independent action of some third party not before the court"; and (3) a likelihood that the injury will be redressed by a favorable decision, by which we mean that the "prospect of obtaining relief from the injury as a result of a favorable ruling" is not "too speculative."[23]

The burden is on the Trustee to establish that he has standing to pursue this action.[24]

The Court agrees with Alden and finds that the Trustee lacks standing to pursue this claim. Count I of the Complaint alleges that the purported security interest claimed by Alden in the BBI stock owned by Aaron on the date of filing is ineffective and void. If the Trustee were successful in establishing that the transfer was not in accordance with the SPA and is void, the Trustee stands to gain nothing from such a victory. Whether a valid lien is attached to the BBI shares at this point has no impact on any interests of the bankruptcy estate because the estate has no interest in those shares. With the property already abandoned from the estate, a ruling that the BBI shares owned by Aaron are not subject to a lien by Arden would not redress any

---

[23] *In re Integra Realty Resources, Inc.*, 262 F.3d 1089, 1101 (10th Cir. 2001) (quoting *Northeastern Fla. Chapter of the Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 663-64 (1993)).

[24] *Northeastern Chapter of Associated Gen. Contractors*, 508 U.S. at 663 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

13.08.12-A Buerge MTD.wpd

potential injury to the bankruptcy estate. Therefore, the Court finds that the Trustee lacks standing to seek a ruling that the alleged security interest held by Alden in the BBI shares is void.

### B. The Trustee Lacks Standing to Pursue Count II of the Complaint.

Count II seeks a determination that Alden has no interest in any shares of BBI owned by Aaron. The Trustee alleges that of the three stock certificates Aaron owns, two of them—Certificates #136 and #138—were cancelled on March 2, 2009, and the third—Certificate # 144—was not included in the security agreement between Alden and Aaron.

As with Count I, the Court finds that the Trustee lacks standing to bring the action set forth in Count II of the Complaint. Count II is essentially another path to the same potential result by the Trustee—a finding that Alden does not have a security interest in the BBI shares owned by Aaron. As with Count I, the Trustee lacks standing to bring this action because even if he were successful in establishing that Certificates #136 and #138 were cancelled, and Certificate #144 was never subject to a security interest by Alden, the Trustee cannot recover any property for the estate or benefit the estate. The Trustee's action essentially seeks to turn an encumbered piece of property—that is not property of the estate—into an unencumbered piece of property—that is still not property of the estate. Prevailing on this action would not benefit the estate.

### C. The Trustee Lacks Standing to Pursue Count III of the Complaint.

Count III of the Complaint seeks to avoid the alleged security interest held by Alden in the BBI shares for the benefit of the bankruptcy estate pursuant to the Trustee's strong arm powers.

- 9 -

13.08.12-A Buerge MTD.wpd

The Bankruptcy Code provides a Chapter 7 bankruptcy trustee with the power to void liens against property that are unperfected when the petition is filed and to preserve those liens for the benefit of the bankruptcy estate.[25] Once a lien is voided under 11 U.S.C. § 544, the lien is automatically preserved for the benefit of the estate under § 551. Also, the Trustee may seek recovery under § 550(a) which provides that to the extent a transfer is avoided under § 544, the Trustee may recover the property transferred or the value of such property from the initial transferee.[26]

The Trustee attempts to establish his standing to pursue this claim by arguing that his power to avoid unperfected liens extends not only to property of the estate, but also to property that once was, but no longer remains, property of the estate. According to the Trustee, § 544(a) authorizes him to avoid transfers of property of the estate and transfers of property of the debtor. The Trustee relies upon *In re Colon*,[27] which held that the Chapter 13 trustee's strong arm powers extend to all of the debtors' property on the petition date, even if the property is later removed from the estate through the exemption process, and *In re Mollison*,[28] which held that the trustee's avoiding powers are not limited by the removal of property from the estate pursuant to § 362(h)(1). The Trustee's reliance on these cases is misplaced.

*Colon* was a Chapter 13 proceeding in which the debtors' confirmed plan specifically retained for the trustee the right to avoid a residential mortgagee's lien. Under Kansas law, a debtor's residence is, subject to certain limitations not applicable in *Colon*, fully exempt

---

[25] *In re Roser*, 613 F.3d 1240, 1243 (10th Cir. 2010). *See also* 11 U.S.C. § 544(a) (trustee's avoidance power) and § 551 (preservation of voided liens for the benefit of the bankruptcy estate).
[26] *See* § 550(a)(1).
[27] 345 B.R. 723, 726 (Bankr. D. Kan. 2005).
[28] 463 B.R. 169, 188 (Bankr. D. Mass. 2012).

regardless of value. The Kansas homestead is not an estate; it is a constitutional right implemented as an exemption that is remedial in nature.[29] Upon allowance of the homestead exemption, the debtors' residence was no longer property of the bankruptcy estate.

In *Colon*, the order confirming the debtors' plan also provided that property of the debtors' bankruptcy estate would revest in the debtors at the end of the case "after approval of the Trustee's Final Report and Account by the Court."[30] Judge Karlin observed that in a Chapter 13 bankruptcy when property revests in the debtor that the Chapter 13 trustee probably does not have standing in a proceeding that does not benefit any of the creditors of the estate.[31] Although the effect of an allowed exemption is to remove the subject property from the bankruptcy estate, this does not impair the trustee's, or for that matter the debtor's, ability to exercise avoidance powers under the Bankruptcy Code.[32] For example, by its very nature, a § 522(f) motion seeks to avoid liens that impair a debtor's interest in exempt property.

*Colon* considers trustee avoidance rights preserved by a confirmed Chapter 13 plan with respect to property of the debtors that was properly exempted. In contrast, the case *sub judice* involves the abandonment of property under § 554, which entails a different process, result and effect. Here, this Court no longer has subject matter jurisdiction over the abandoned property and the Trustee is divested of all control or interest in the property because it is no longer property of the bankruptcy estate. As noted, abandonment does not divest this Court of jurisdiction to enforce the debtor's right to claim an exemption under § 522; again, one

---

[29] *See* KS. CONST. art. 15, § 9, and KAN. STAT. ANN. § 60-2301 (2012).
[30] *Colon,* 345 B.R. at 727.
[31] *Id.* at 727, citing to 1 KEITH L. LUNDIN, CHAPTER 13 BANKRUPTCY § 60.1 at 60-4 (3d ed. 2004).
[32] *Id.* at 726; *Bennett v. Commercial Credit Plan (In re Bennett)*, 13 B.R. 643, 645 (Bankr. W.D. Mich. 1981); *see also* § 522(f) for an example of debtor's specific avoidance rights as to exempt property.

- 11 -

13.08.12-A Buerge MTD.wpd

Case 13-06014    Doc# 20    Filed 08/13/13    Page 11 of 17

encounters the distinction between property that is removed from the bankruptcy estate as exempt and property which is abandoned from the bankruptcy estate under § 554.

The Trustee's reliance on *In re Mollison* is also misplaced. *Mollison* evaluates the effect of § 362(h) (which was added as part of the 2005 amendments). Section 362(h) effects removal of certain personal property from a debtor's bankruptcy estate *sans* notice with opportunity for hearing and *sans* an evidentiary hearing. Section 362(h)(1) is limited and only applies "with respect to personal property of the estate or of the debtor securing in whole or in part a claim, or subject to an unexpired lease, and such personal property shall no longer be property of the estate if the debtor fails to comply" with the applicable filing requirements of § 521(a)(2) and to timely comply with such statement of intention.[33]

In some measure, § 362(h) is a partial codification of pre-2005 amendment law wherein some courts held that the debtor's failure to comply with her statement of intention entitled the secured creditor to seek by motion and to procure relief from the automatic stay as to the subject property.[34] Section 362(h) was added to the Code to provide teeth to enforce a debtor's compliance with her statement of intention filed pursuant to § 521(a)(2); prior to the amendment, the statutory mechanism for enforcement fell upon Chapter 7 trustees, who were generally hesitant to insure a debtor's compliance.[35] The 2005 amendments to § 521 "arguably did nothing to change the result of earlier cases which held that a debtor could retain property subject to a security interest if the debtor remained current on payments and other contract obligations.

---

[33] 3 COLLIER ON BANKRUPTCY ¶ 362.11 at 362-137 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2013).

[34] *See* 1 HENRY J. SOMMER, ET AL., CONSUMER BANKRUPTCY LAW AND PRACTICE § 11.4.2.3 at 270-71 (10th ed. 2012).

[35] *See* § 704(a)(3); please note that this section was not changed in the 2005 amendments and erroneously refers to the pre-amendment section and not to the redesignated section 521(a)(2)(B).

- 12 -

Those cases were based on the plain language of the Code, which in all material respects is unchanged."[36] The legislative history does not indicate that Congress intended to change the pre-amendment law. "Indeed, because the provisions are limited to secured debts and leases involving personal property, the 2005 amendments strengthen the argument that a debtor has a right to continue payments on debts secured by real property and retain the property without reaffirming."[37] However, there is case law contrary to this interpretation.[38]

In contrast to §362(h), under § 554(a) it is the trustee who seeks abandonment of property of the bankruptcy estate, and under § 554(b) a party-in-interest seeks such abandonment. Abandonment under § 554(c) allows for a technical abandonment at the time of the closing of a case, unless the court orders otherwise.[39] It has been commented that removal of property from the bankruptcy estate under § 362(h) may occur as early as 30 days after the date the petition is filed if the debtor failed to comply with § 521(a)(2)(B). This deadline can predate both the initial setting for a § 341 meeting and a trustee's meaningful inquiry as to the debtor's assets and alleged encumbrances on these assets.[40] Some courts have analogized the removal of property from the estate under § 362(h)(1) to the abandonment of estate property under § 554.[41] However, these are separate statutes with different functions and purposes. Ultimately, the

---

[36] *See* 1 CONSUMER BANKRUPTCY LAW AND PRACTICE § 11.4.2.1 at 269.
[37] *Id.*
[38] *Id.*, § 11.4.2.3 at 270, 271 and § 11.4.2.5 at 273.
[39] Brendan Gage, *Why Technical Abandonment is Far from Technical*, AMERICAN BANKRUPTCY INSTITUTE JOURNAL, July 2013, at 56.
[40] The trustee has a short period of time under § 362(h)(2) within which to file a motion to avoid the effects of § 362(h)(1). For contrasting views on §362(h) and its effects, *see* Wendell J. Sherk, *Section 362(h) Deprives a Trustee of Property of the Estate*, AMERICAN BANKRUPTCY INSTITUTE JOURNAL, October 2011, at 42; and Neil C. Gordon, *Section 362(h) Does Not Deprive a Trustee of Standing to Avoid a Lien*, AMERICAN BANKRUPTCY INSTITUTE JOURNAL, December/January 2011, at 50.
[41] *See Mollison*, 463 B.R. at 186, collecting cases.

- 13 -

holding in *Mollison* is limited in that the court only concluded that the "Trustee's § 544(a)(1) avoiding power is not limited by the removal of property from the estate pursuant to § 362(h)(1)."[42] *Mollison* interprets § 362(h)(1), which is not applicable here. What is pertinent is the abundance of case law that once a trustee abandons property under § 554, the bankruptcy court no longer has jurisdiction over that property, and the trustee has neither control of the property nor the right to employ avoidance powers relating thereto. The court in *Mollison* acknowledges the ample case law that supports this notion: A "trustee's status as [a] hypothetical lien creditor under § 544 attaches as of the commencement of the case and terminates when the property is no longer property of the estate."[43]

In order to have standing to pursue this claim, the Trustee must show that, if successful, the estate stands to benefit in some manner from the cause of action. In avoidance actions under § 544, Chapter 7 trustees seek to avoid unperfected—but otherwise valid—liens that are attached to property of the debtor. "[U]pon avoidance of a lien, . . . the trustee 'steps into the shoes of the former lienholder, with the same rights in collateralized property that the original lienholder enjoyed.'"[44] Unlike a typical avoidance action, Count III in the Complaint does not allege that Alden holds a valid security interest that was not perfected, or was improperly perfected, on the date of filing. Instead, the Trustee alleges that the purported lien never attached to the property at all.

Avoiding a valid, but unperfected, lien can provide benefit to the bankruptcy estate by

---

[42] *Mollison*, 463 B.R. at 188.
[43] *Mollison*, 469 B.R. at 187 n.19 (internal quotations omitted), citing, among other cases, *Old West Annuity & Life Ins. Co. v. The Apollo Group*, 605 F.3d 856, 863 (11th Cir. 2010).
[44] *In re Trout*, 609 F.3d 1106, 1110 (10th Cir. 2010) (quoting *In re Haberman*, 516 F.3d 1207, 1210 (10th Cir. 2008)).

- 14 -

allowing the Trustee to step into the shoes of the lienholder. However, a proceeding to show that a lien never attached to property—and is, therefore, not only unperfected but also essentially invalid and entirely worthless—is of no value to the estate when the property potentially tied to the lien is not property of the estate. Because the property has been abandoned and now belongs solely to Aaron, he would have standing to bring an action such as is found in Count III. Aaron would benefit from a finding that the lien never attached to the property. Unfortunately for the Trustee, the estate would not reap such a benefit and, therefore, lacks standing.

### D. The Trustee Lacks Standing to Pursue Count IV of the Complaint Based Upon the Court's Prior Rulings.

Count IV of the Complaint seeks turnover of BBI Certificates #136, 138 and 144. The Trustee contends that Alden is in possession of these stock certificates and should be compelled to turn them over pursuant to § 542(a). Under § 542, a bankruptcy trustee has the authority to compel turnover of any property that the trustee may use, sell, or lease under § 363 of the Bankruptcy Code. However, in this case the Court ordered the Trustee to abandon any interest the estate has in the shares of BBI that are owned by Aaron. Once that property was abandoned, it was no longer property of the estate and no longer fell within the reach of the Trustee under § 542(a).[45] The Trustee lacks standing to bring an action against property which has been abandoned by the estate, so Count IV must be dismissed.[46]

---

[45] *See Dewsnup*, 908 F.2d at 590.
[46] Although the Court has found that Count IV, as well as Count V which will be discussed herein, can be dismissed based upon the Trustee's lack of standing, the Court notes that the claims may also be dismissed based upon a failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), which is made applicable in this adversary proceeding pursuant to Fed. R. Bankr. P. 7012(b), as well. The Trustee is seeking turnover of property that is no longer property of the estate. Nothing in § 542 authorizes the Trustee to seek turnover of property in which the estate no longer holds an interest. In addition, the Court understands that at least a portion of the stock in question has now been sold by Aaron, rendering the Trustee's claim to turnover of that stock even more remote.

13.08.12-A Buerge MTD.wpd

### E. Count V of the Complaint Must Be Dismissed Based Upon the Court's Prior Rulings.

In Count V of the Complaint, the Trustee seeks an order disallowing any claim asserted by Alden, including Claim No. 10 already filed, pursuant to § 502(d). Under that section, the Court is required to "disallow any claim of any entity from which property is recoverable under section 542 . . . or that is a transferee of a transfer avoidable under section . . . 544 . . . , unless such entity or transferee has paid the amount, or turned over such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550 or 553" of the Bankruptcy Code.

Count V is dependent upon the Trustee successfully prosecuting one of the other claims in this action. Without successfully avoiding Alden's security interest in the BBI stock or successfully obtaining an order requiring turnover of the BBI stock certificates, the Trustee has no action against Alden to which § 502(d) would apply. Because the Court has found that Counts III and IV, which seek to avoid Alden's security interest in the stock and seek turnover of the stock certificates, should be dismissed based upon a lack of standing, the Court finds there is no basis for allowing Count V to proceed.

### III. Conclusion

For the reasons set forth previously, the Court finds that Defendant Alden Buerge's Motion to Dismiss should be granted. Because the Trustee has been ordered to abandon any interest the estate had in the shares of BBI stock owned by Debtor Aaron Buerge, the Trustee does not have standing to avoid or otherwise attack the purported security interest held by Alden in that property. Similarly, the Trustee does not have standing to seek turnover of the stock certificates held by Alden because the estate no longer has an interest in the stock. Finally,

because the Trustee was unsuccessful in avoiding the security interest held by Alden in the BBI stock and was unsuccessful in seeking turnover of the stock certificates, there is no basis to disallow Alden's claim under § 502(d). The Trustee waited until the last days of the two-year statute of limitations under § 546 within which to bring his avoidance action. The Trustee filed this adversary proceeding after unsuccessful litigation to sell the assets and after the Debtor's successful litigation for an order directing the Trustee to abandon those assets under § 554. The ship has sailed with regard to the Trustee's administration of these assets, and this adversary proceeding seems an unsuccessful attempt to circumvent this Court's prior rulings.

**IT IS, THEREFORE, BY THE COURT ORDERED** that Defendant Alden Buerge's Motion to Dismiss is granted. Judgment will be entered in favor of the Defendant on all counts. The foregoing constitute Findings of Fact and Conclusions of Law under Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure which make Rule 52(a) of the Federal Rules of Civil Procedure applicable to this matter. The judgment based on this ruling stated above will become effective when it is entered on the docket for this case, as provided by Federal Rule of Bankruptcy Procedure 9021.

**IT IS SO ORDERED.**

### 

ROBERT D. BERGER
U.S. BANKRUPTCY JUDGE
DISTRICT OF KANSAS

- 17 -

13.08.12-A Buerge MTD.wpd

Case 13-06014    Doc# 20    Filed 08/13/13    Page 17 of 17